The will and deed under which both parties claim in this case having been made in the State of South Carolina where the testator and grantor lived and where the property at the time was, the laws of that state as administerded by her judicial tribunals must form the rule of its decision. Story's Conflict, 402, 409; 4 Wilson and Shaw, 28, 37.
Referring to them we find that as early as the year 1795 a devise "of negroes to a daughter distinct from her husband during her life and at her death to the heirs of her body," was held to create an estate tail, the words were considered words of limitation and not ged to create an estate tail so as to vest an absolute interest in the daughter. Dott vs. Cunn., 1 Bay, 453. In 1833 the terms "I lend to my daughter Peggy Starke four negroes, and to another daughter other negroes during their natural lives,and then to the heirs of their bodies," with an appointment of executors of the will "in trust for the intents and purposes therein contained," were likewise adjudged to create an estate tall so as to vest an absolute Interest in the daughter, and that the marital rights of the husband attached giving to his administrator the right of the property after his death, —
Judge O'Neill who delivered the opinion of the court saying "I have struggled to give effect to what I believe the clear intention of the testator that Mrs. Starke should take an estate for life and her children at her death should take as purchasers. But the technical rule is too strong and too well settled that words heirs of the body must be considered words of limitation and not words of purchase and that consequently the estate vests in the first taker." Hinson and Wife vs. Picket, 1 Hill, 37. This case is decisive of all the points in the present controversy, the terms "heirs of the body," "lend," and the trust in the will, or tantamount expressions thereto having been all very fully considered. The only difference is in the expressions "share and share about," to be found in the will before this Court, and "hath given to the heirs of her body which shall survive her," and to "be equally divided between her surviving heirs as their exclusive property," in the deed. We have not been able to find a direct adjudication in South Carolina upon these; the nearest approach to it being the case of Stockton vs. Martin in which the deed was "to the daughter during her life and then to her children *Page 387 share and share alike, habendum to the daughter for life and the heirs of her body with a warranty to the like effect. The majority of the court held the habendum the controlling part of the deed and adjudged an estate tail so as to give the property to the first taker.2d Bay, 471.
This case might be regarded as decisive so far as the words "share and share about" are concerned, as they formed a component part of the deed, and if not noticed by the court as material this of itself would be indicative of their opinion as to their immateriality. There is weight too in the fact that no case of recent date has been cited to us of the same court overruling or calling in question its authority, and none coming within our reach we have been strongly inclined to the opinion that it should be held as conclusive. We have not thought proper in a case like the present where a question is raised as to the law of a sister state to inquire into the grounds or reason for a decision made or given by her Courts and to say what they ought to have decided. This would be transcending our powers and assuming an office for which we are by no means disposed to assert our competency — it would be treating a court long distinguished for intelligence and ability with less than the regard justly its due either by courtesy or the rules of law. Our duty is to ascertain the law of that state, by no means to say what it ought to be. The decisions on this subject will, we think, be found in harmony with the English law which they profess to follow as will be seen in numerous cases to which a reference may be given, so that we have less reluctance to give to them all the weight of a decisive authority on the very point in question.
"The terms share and share alike create a tenancy in common." Bunch vs. Hurst, 3 Des., 288; Woodgate vs. Unwin, 4 Sim., 129; Westcott vs. Cady, 5 John. Ch., 334.
In the case of Doe and Candler vs. Smith "where a testator devised freehold lands to his daughter and the heirs of her body forever as tenants in common and not as joint tenants and in case of her dying without issue then over, it was held that the daughter took an estate tail." 7 D. E., 532. So in Piersonvs. Vickers, 5 East., 548; Bennett vs. Earl Tankville, 19 Vesey, 170; Cole vs. Goldsmith, 7 Taunt, 209.
In Jenson vs. Wright decided in the House of Lords after full argument (and Lord Eldon said no case was ever better argued at *Page 388 
that bar,) the devise was to W. and after his decease to the heirs of the body of W. in such shares as he should appoint and for want of this then to the heirs of the body of W. share andshare alike as tenants in common and if but one child the whole to such child, c., it was held that W. took an estate tail." 2 Bligh., 1.
So in the recent case of Bosnal vs. Harvey with like provisions. In Atkinson vs. Featherstons, "the devise was to I. and E. his wife for their natural lives, and for the life of the longer liver of them and after the decease of the survivor to the heirs of the body of E. by I. already begotten or to be begotten, to be equally divided among them, share and share alike," it was held an estate tail. 1 Barn. and Ad., 944.
Survivorship is by no means an uncommon form of an estate tail — thus a grant to A. and B. and the survivor and the heirs of such survivor, is of frequent occurrence. "The doctrine of survivorship is the distinguishing incident of title by joint tenancy, and therefore at common law the entire tenancy or estate, upon the death of any of the joint tenants went to the survivors, and so on to the last survivor who took an estate of inheritance." "The common law favored title by joint tenancy by reason of this very right of survivorship." 4 Kent, 360.
We do not intend to convey the idea that in respect to the estate tail, there a uniform entire joint tenancy. On the contrary, it forms an exception to the rule "for inasmuch as the devisees with some exceptions cannot either in fact or contemplation of law have common heirs of their bodies, they are by necessity of reason tenants in common of the estate tail." Co. Litt., 184 a; 2 Vern, 545; Cooper, 777.
"As the reason, however, applies only to the inheritance in tail, and not, to the immediate freehold, the devisees are joint tenants for life with several inheritances in tail, so that on the death of one of them, whether he leave issue or not, the surviving devisee becomes entitld for life of his share under the joint tenancy and the inheritance in tail descends to the issue if any subject to such estate for life." Jarman on Wills, 158.
Nor is restriction to particular heirs destructive to the estate tail — thus to the heirs male or female — to the first or next heir male. S Viner, 234. Such an estate (estate tail) may be created "by an expression denoting an intention to give the devisee an estate of inheritance descendible to his orsome of his lineal, but not to his collateral *Page 389 
heirs which is the characteristic of an estate tail as distinguished from a fee simple. 2 Jarman on Wills, 232.
The term "surviving heirs' is one of unusual occurrence in the books, for whilst we have "survivors," "surviving children" "sons" "issue" and "daughters," there is in the books no such word attached to heirs as far as we have been able to discover, and we are inclined to the opinion that so connected, it is without meaning, neither enlarging nor contracting the estate. The heirs of Mrs. Clardy from necessity are those who survive her at her death — they could not have preceded her. Nemo esthaeries viventis. There is no heir until the death of the ancestor. The fair import of the clause then would seem to be that the estate is to go to the heirs of her body at her decease. If this view be correct the case is freed from difficulty, and the deed is a naked grant to the heirs of the body.
It may however be more satisfactory supposing that we are mistaken in this respect, to consider how far words superadded to the term heirs of the body, change the character of the devise and whether by possibility this word "surviving" may produce this effect. It seems that "if the superadded words of limitation operate to change the course of descent, they will convert the words on which they are grafted into words of purchase." Jarman, 276.
It is not to be inferred that the words heirs of the body, are incapable of control or explanation by the effect of superadded expreasions, clearly demonstrating that the testator used these words in some other than their ordinary acceptation, and as descriptive of another class of objects. Some of the examples given of words producing this change are of a devise to a first, second, third and every other son of B. and the heirs of the body of such, first second, c., son.
Love vs. Daviers, 2 Ld. Ray., 1561. To the first son of the body of E. and the heirs male of the body of such first son, and for default of such issue, to the use of the second son of the body of E., and so to all and every other, the heirs male of the body of E., and to the heirs male of their body according to seniority of age.
Lisle vs. Gray, 2 Lev., 263. These cases it is said leave no doubt of the design of the testator and we conceive do not. 2 Jarman, 302.
The cases bearing the nearest analogy to the present are to this effect. A person devised to his three daughters to be equally divided, and if any of them died before the other then the one to be *Page 390 
the other's heir equally to be divided, and if his three daughters died without issue then over, adjudged that his daughters took an estate tail. King vs. Rumbal, Cro. Ja., 448.
In Richards vs. Lady Bergaviney, the devise was to the Lady Bergaviney, and such heir of her body as shall be living at her death with remainder over, and it was adjudged an estate tail. 2 Vernon, 324.
A devise to W. for life, and after his decease to the use of the heirs, male, of the body of W., lawfully begotten, severally, respectively, and in remainder the one after the other, as they and every of them shall be in seniority of age, and priority of birth, gave W. an estate tail. Lord Thurlow said where the estate is so given that it is to go to every person who can claim asheir to the first taker, the word heirs must be a word oflimitation. All heirs taking as heirs must take by descent. Jonesvs. Morgan, 1 B. C. C., 206.
Now it is not perceived that the word "surviving" clearly demonstrates that the testator used it and the word heirs of thebody in some other than the ordinary acceptation of the latter expression, and as descriptive of another class of objects. It is clear that it is not embraced within any of the cases which have been held to alter the rule. Obviously those who take as surviving heirs claim as heirs to the mother at her death, and taking as heirs they take by descent. According to our view the property would descend to the whole class of heirs of Mrs. Clardy, and they would become entitled to the estate in same manner, and to the same extent, and with the same descendible qualities as if the grant had been simply to her and her heirs. 4 Kent, 222.
It is scarcely necessary to quote authority to the effect that where personal estate is bequeathed in language which, if applied to real estate, would create an estate tail, it vests absolutely in the person who would be the immediate donee in tail, and it is immaterial whether the bequest itself contain the words of limitation or refer to a devise of realty creating an estate tail. 2 Jarman on Wills, 492; 1 Beav., 150.
We have been asked to consider this question as a new one, and and as if the cases of Doe Laning, Doe Goff, and a few others asserting a doctrine contrary to those cited to sustain the rule in Shelley's case still continued to be authority in the English Courts. It has been insisted that these cases have not been overruled, and are quite reconcilable with the latter authorities; but we think differently. *Page 391 
That great jurist the late Chancelllor Kent, than whom no one could speak with greater truth and propriety on this subject says. "The rule in Shelley's case survived all the rude assaults which it received in the controversy under Perrin Blake, and it has continued down to the present time in full vigor with commanding authority, and with its roots struck immovably deep in the foundations of the English law. All the modern cases contain one uniform language, and declare that the words heirs of the body, whether in deeds or wills, are construed as words of limitation, unless it clearly and unequivocally appears that they were used to designate certain individuals answering the description of heirs at the death of the party."
An English author of whose recent production the present Chief Baron of the Exchequer has spoken "as a very learned work," after noticing the case of Perrin and Blake, says: "since this solemn determination the rule in question, has been regarded as one of the most firmly established rules of property, and strictly speaking no instance can be adduced of a departure from it." 2 Jarm., 243; 14 M. W., 706.
The same author says, after speaking of the various cases opposed to Doe vs. Laming, "we may then reasonably hope never to hear the case of Doe vs. Laming again cited as an authority in a court of law." 2 Jarm., 288.
In Jessen vs. Wright, Lord Redesdale said: "It is impossible to decide this case without holding that Doe vs. Goff is not law." 2 Jarm., 292.
It is said: "if the children of Anner Clardy are deprived of this property it will be in spite of the clear and unequivocal intention to the contrary of their grandfather, William Gore." To language of this kind we would oppose the forcible remarks of the Supreme Court of South Carolina in the case of Carr vs. Porter, with this additional observation, that after an acquiescence by the people of that State for upwards of fifty years in a law as announced by her courts, it is rather too late to call in question its propriety. The reply to such remark is best made in the language of the court responsible for the result to which we have arrived. They condemn with great force and propriety the idea of a Judge making a decision according to his own views of the intention of a testator. — "Wherever a construction has been given by a competent tribunal to any form of words, such decision has always been held obligatory *Page 392 
on all succeeding Judges in cases of wills as in any other cases Fearne speaking of the notion that we must lay aside all precedent in the construction of wills, and that a Judge must be governed by his own views, says, `such a mode of construing wills, if ever fully established, would open an almost unlimited power to the Judge of disposing of the property of testators, and diverting the circulation of it to his own mind.' If rules and maxims of law were to ebb and flow with the taste of the judge, or to assume that shape which in his fancy best becomes the times, c., I should be glad to know what person would venture to purchase an estate without first having the judgment of a Court of justice respecting the identical title which he means to purchase." 1 McCord, 71.
After the most mature consideration we are of opinion that the court below erred in giving judgment for the defendant. It should, in our opinion have been for plaintiff on the special verdict.